Donald Gene **RICHARDSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–77–856.

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1979.

T. Hurley Jordon, Public Defender, Robert A. Ravitz, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Charles Helm, Legal Intern, for appellee.

OPINION

BRETT, Judge:

Appellant, Donald Gene Richardson, hereinafter referred to as the defendant, appeals from his conviction in the Oklahoma County District Court, Case No. CRF–75–2070, of Robbery With Firearms, After Former Conviction of a Felony. He was sentenced to thirty five (35) years in the State penitentiary.

On June 2, 1975, two armed men forced one Curtis Foster to drive to an Oklahoma City Safeway, rob the store at gunpoint, then fled in Mr. Foster's car. In the days following the crime, Mr. Foster and two other eyewitnesses, Safeway employees, selected a picture of the defendant from a photographic display, identifying him as one of the robbers. However, the suspect was not located until December, 1976, when the District Attorney's office learned he was in federal custody.

In his first assignment of error, the defendant contends that the State failed to exercise due diligence in bringing him to trial, in violation of *Smith v. Hooey*, 393

U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). His position is that the State should have begun proceedings to return him to Oklahoma when he was first arrested by federal authorities in April, 1976. We are unpersuaded.

In *Smith v. Hooey*, supra, a federal prisoner tried for six years to be brought to trial on a charge pending in Texas; for six years the Texas District Court turned a deaf ear. The Supreme Court held that the state had a Sixth Amendment duty to make a good faith, diligent effort to return the accused for trial within a reasonable time. The case at bar is clearly distinguishable, primarily because the Oklahoma court did not know where the defendant was, whereas the Texas court did know. Similarly, in *Miracle v. Jackson County District Court*, Okl.Cr., 521 P.2d 837 (1974), officials knew that the suspect was imprisoned in another state. It is this knowledge that activates the duty, and not, as the defendant asserts, the mere fact that an accused has been arrested elsewhere. We hold that the *Smith v. Hooey* requirement applies as soon as the State learns a suspect against whom it has a detainer is in custody within another jurisdiction.

In the present case, the State learned of the defendant's whereabouts in December, 1976, and on March 3, 1977, a writ of habeas corpus ad prosequendum was issued. We do not find this delay an unacceptable lack of diligence, especially since the State proceeded quickly thereafter, commencing trial within two months of the defendant's return to Oklahoma.

The defendant's second assignment of error asserts that the trial court erroneously overruled his motion for a continuance based upon the absence of a witness, the defendant's alleged accomplice in the crime. Counsel founded this motion on the defendant's belief that this witness would testify that they had not been together on the day of the robbery.

A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal absent a showing of abuse. Here, we find the trial court was justified in overruling the motion because the defendant failed to meet the statutory requirements. Title 12 O.S.1971, § 668, which governs in criminal cases as well as in civil cases, provides in part:

"A motion for a continuance, on account of the absence of evidence, can be made only upon affidavit, . . . and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, . . . .."

In the instant case, the motion was not made upon affidavit. The only affidavit in the record supports a written motion for continuance based upon separate grounds. This shortcoming alone is ordinarily fatal, *Nichols v. State*, Okl.Cr., 555 P.2d 70 (1976). Even overlooking that deficiency, the defendant's argument would not be well taken, since he failed to show the probability of procuring this witness' testimony within a reasonable time. See *Snow v. State*, Okl. Cr., 453 P.2d 274 (1969). When the motion was made, the witness, a federal prisoner, was in the hospital refusing to undergo treatment for a back ailment. The State, too, had sought unsuccessfully to return him to Oklahoma for his own trial, and both parties were uncertain when he would be available. Accordingly, we hold that the trial court did not abuse its discretion in overruling the defendant's motion for a continuance.

The defendant's third, fourth and fifth assignments of error concern pretrial identification procedures. As mentioned, three eyewitnesses identified the defendant from a photographic display shortly after the robbery. Nearly two years later, the witnesses were shown photographs again, and each repeated his identification of the original picture of the defendant and also selected a current picture of him from another group of photographs. Next, a lineup was conducted. Although the defendant's attorney was present during the viewing of the lineup, he was excluded from the subse-

quent interviews in which the witnesses gave their responses, despite his request to attend those interviews. The third assignment of error then asserts that this refusal deprived the defendant of his right to counsel in violation of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Counsel's fine argument has quite convinced us that this exclusion constituted a denial of the defendant's right to an attorney, but we are equally convinced that the error does not warrant a reversal specifically under the circumstances of this case.

The United States Supreme Court in *Wade*, holding that an accused is entitled to the presence of counsel at a post-indictment lineup, recognized the hazards which often adhere to pretrial identification and discussed the function of the attorney at this critical stage. Counsel's attendance, the Court reasoned, enables counsel to later reconstruct any prejudicial features of the lineup on cross-examination, thus ensuring a meaningful confrontation at trial. Moreover, the very presence of counsel may help to avert potential impropriety or suggestibility.

It is clear to us that the subsequent interview in which a witness actually makes his identification is a stage every bit as critical as the viewing upon which the identification is based. The need for counsel's presence and the reasons behind this safeguard are compelling throughout the entire lineup procedure, of which the interview is a part. We therefore hold that an accused's right to counsel under *Wade* extends to the interview of a witness following a post-indictment lineup when that interview is conducted for the purpose of identifying an individual who has appeared in a lineup.[1]

■ The issue then becomes whether the illegality of the procedure tainted the witness' in court identification. *United States v. Wade*, supra. In other words, was the in court identification based on the suspect procedure, in which case it should be excluded from evidence, or was it based on the witness' memory of the crime and thus admissible.[2] The Supreme Court has held that even an unconstitutional pretrial confrontation will not invalidate a courtroom identification that can be established as independently reliable. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■ Whenever an issue arises concerning the constitutionality of an extrajudicial identification, the trial court should conduct a hearing outside the presence of the jury to determine whether the witness is able to make an identification of the defendant which is independent of and severable from the pretrial procedure. *United States v. Wade*, supra; *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and *Thompson v. State*, supra, footnote No. 2. The trial court conducted such a hearing concerning Foster's identification, but overruled the defendant's motion for similar hearings concerning the remaining two eyewitnesses' identification. While the trial judge in the case at bar determined, in camera, that the identification by witness Foster was independently reliable, it is not clear whether he found the pretrial procedure to be unconstitutional, in which case he would have had to determine the independent reliability of each eyewitness' identification of the defendant. However, we find the pretrial identification to be violative of constitutional standards, so we must look to the evidence of the remaining eyewitness' identifications to determine their independent reliability.

---

1. This issue is one of first impression in Oklahoma. For decisions from other jurisdictions reaching the same result, see *State v. McGhee*, La., 350 So.2d 370 (1977), and *People v. Williams*, 3 Cal.3d 853, 92 Cal.Rptr. 6, 478 P.2d 942 (1971).

2. Although the trial judge asked the prosecutor whether he planned to offer evidence of the

lineup in his case-in-chief, we wish to reemphasize that this is irrelevant, as we did in *Thompson v. State*, Okl.Cr., 438 P.2d 287 (1968). An unconstitutional pretrial identification may taint an in court identification, and when it does, whether or not evidence of that procedure is introduced affects in no way the invalidity of the in court identification.

The United States Supreme Court in *Wade* listed several possible factors to be considered in making this determination:

"[F]or example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." (Citations omitted, footnote omitted) 388 U.S. at 241, 87 S.Ct. at 1940.

In the present case, the relevant factors were substantially the same for all three witnesses. Each had ample opportunity to observe the alleged criminal act. The robbery took place in broad daylight; the robbers wore no masks; all the witnesses saw them long enough and closely enough to make unequivocal identifications from a photographic display, and they remained unwavering during subsequent identification procedures. In addition, each witness testified that he or she based the subsequent in court identification on memory of the crime. On the other hand, the time lapse of two years was considerable, and the conduct of the lineup was less than impeccable. For instance, all the witnesses were permitted to view the lineup together when they should have done so one at a time, as recommended in *Thompson v. State*, supra.[3]

In consideration of all of these factors, and in light of additional evidence, such as the defendant's fingerprints in the getaway car, we find no reversible error on these grounds.

In his sixth, seventh and eights assignments of error, the defendant attacks three prosecutorial comments.[4] The first statement occurred during closing argument when the Assistant District Attorney, stressing that the man in the first photograph, chosen shortly after the crime, and the defendant were one and the same, said, "You've got the photographs. You can see it's the same man as the man who's trying to cover up his identity." Counsel for the defendant equates this statement with a comment on the defendant's failure to take the stand. See 22 O.S.1971, § 701, and *Hanf v. State*, Okl.Cr., 560 P.2d 207 (1977). We do not accept this equation. Taken in context, this is not a "hiding behind the Fifth" comment, but, rather, a comment on the defendant's changed appearance. Since the photographs were in evidence, the prosecutor's remark may be classified as a reasonable inference from the evidence.

The next statement complained of occurred when the Assistant District Attorney concluded his closing argument with the observation that the jury was to decide only guilt or innocence "at this stage." Counsel characterizes this phrase as a reference to prior offenses, which would be prohibited in a bifurcated proceeding pursuant to 22 O.S.1971, § 860. Since bifurcated proceedings are conducted only for capital offenses and in the prosecution of defendants with prior felony convictions, the use of language indicating a second stage is prejudicial. To a juror familiar with bifurcated trials, this would indicate that the defendant was a prior felon. Such an inference could influence that juror to consider the existence of the prior conviction in determining the defendant's guilt or inno-

---

3. This and other possible irregularities form the basis for the defendant's fifth assignment of error, that the totality of the circumstances surrounding the pretrial identifications tainted the in court identifications. Since we have already resolved that the lineup was illegal due to the exclusion of counsel, we need not decide whether other aspects of the lineup rendered it illegal.

4. See generally, *Ray v. State*, Okl.Cr., 510 P.2d 1395 (1973), in which we included the American Bar Association's standards relative to the prosecution function, § 5.8, argument to the jury.

cence of the present charge. Although this is error, and potential grounds for reversal, it was harmless in this case because there was sufficient independent evidence for the jury to convict.

 Finally, the defendant objects to the District Attorney's statement in closing argument of the sentencing stage, describing the defendant as "beyond the [pale], beyond the hope, beyond the reasonable expectations for any sort of reformation." Counsel insists this statement constituted a reference to probation. In *Webb v. State*, Okl.Cr., 546 P.2d 642, 644 (1976), we articulated the following test for determining if a statement made during the second stage of a bifurcated proceeding justifies modification:

> [W]hether in light of the totality of the closing argument the prosecuting attorney makes such an *unmistakable reference* to the pardon and parole system of Oklahoma to result in prejudice to the defendant . . .." (Emphasis added, citations omitted)

Applied here, we find the test is not met; it cannot be said that the District Attorney's remark was an "unmistakable reference" to the pardon and parole system. Accordingly, we hold that none of the remarks complained of warrant reversal or modification.

The defendant's ninth and final assignment of error asserts that the trial court erred in refusing his requested instruction on identity. Dissatisfied with the court's instruction, defense counsel submitted one requesting that the identification testimony be scrutinized with extreme care. We are unpersuaded that the trial court's refusal was erroneous.

 This Court held in *Melot v. State*, Okl.Cr., 375 P.2d 343 (1962), and again in *Moreau v. State*, Okl.Cr., 530 P.2d 1061 (1975), that a cautionary instruction should be given where the witness lacked opportunity to observe the assailant, or where the witness was not positive in his identification, or where the identification was weakened by either qualification or by a failure to identify the defendant on a prior occasion. There may be other times when serious doubt clouds the identity issue so that the instruction would be appropriate.

In the case at bar, however, none of these circumstances was present. We therefore, hold that the court's instruction was properly given and the defendant's proposed instruction properly refused.

For all the foregoing reasons, the judgment and sentence is *AFFIRMED*.

CORNISH, P. J., concurs in results.

BUSSEY, J., concurs in part and dissents in part.

BUSSEY, Judge, concurring in part, dissenting in part:

While I agree that the judgment and sentence should be affirmed, I must respectfully disagree that defense counsel must be present when police interview witnesses after a lineup.